**SEDONA CONTRACTING, INC., Appellant,**

v.

**FORD, POWELL & CARSON, INC. and Boone Powell, Appellees.**

No. 04–98–00531–CV.

Court of Appeals of Texas, San Antonio.

March 17, 1999.

Rehearing Overruled May 3, 1999.

Mark M. Ferguson, San Antonio, for Appellant.

Alex Huddleston, Jonathan Miles, Jenkins & Gilchrist Groce, Locke & Hebdon, P.C., San Antonio, for Appellee.

Before PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by: ALMA L. LÓPEZ, Justice.

This is an appeal from the trial court's granting of summary judgment in favor of the defendants, Ford, Powell and Carson, Inc. ("FPC") and Boone Powell. Appellant, Sedona Contracting, Inc. ("Sedona"), asserts two issues on appeal. First, Sedona contends that a waiver clause in an invitation to bid form violates public policy. Second, Sedona asserts that the appellees failed to establish the affirmative defense of waiver. On review, we conclude appellees established the elements of waiver as a matter of law. We affirm the judgment of the trial court.

### Statement of Facts

The facts in this case are undisputed. The North East Independent School District ("the NEISD") sought improvements to Roosevelt High School in San Antonio, Texas. A contract was entered into between the NEISD and the architectural firm of FPC. Boone Powell, a partner in FPC, executed the contract between FPC and the NEISD. Pursuant to this contract, the architectural firm would serve as the professional representative of the project and would provide the NEISD with consultation and advice.

On July 3, 1997, Sedona submitted its bid to the NEISD. The invitation to bid provided that the NEISD could reject any and/or all bids. The instructions to bidders provided, in part, the following:

> By submitting a bid, each bidder agrees to waive any claim it has or my [sic] have against the Owner [NEISD], the Architect/Engineer, and their respective employees, arising out of or in connection with the administration, evaluation, or recommendation of any bid; waiver of any requirements under the Bid Documents; or the Contract Documents; acceptance or rejection of any bids; and award of the Contract.

Paragraph 6 of the bid form submitted by Sedona stated the following:

Representations: By execution and submission of this Bid, the Bidder hereby represents and warrants to Owner as follows:

(B) the Bidder has read and understands the Bid Documents and the Contract Documents and this Bid is made in accordance with the Bid Documents.

Sedona submitted the lowest bid. On July 15, 1997, it was informed by letter that its bid had been rejected. According to Boone Powell's affidavit, FPC recommended that the school district reject the bid based on its professional opinion that Sedona was not qualified for the project. As a result, the second lowest bidder was selected by the NEISD.

On July 21, 1997, Sedona's attorney met with the NEISD's representatives to discuss its bid. Sedona's attorney was invited to the district's board meeting to be held on July 28, 1997. Sedona was given the opportunity to present evidence that it was a qualified and responsible bidder. After hearing comments, the NEISD board awarded the contract to the second lowest bidder.

At trial, Sedona claimed tortious interference with business relations, defamation per se, business disparagement and negligence. Both parties moved for summary judgment. The trial court granted FPC's motion and ordered that Sedona take nothing. On appeal, Sedona challenges the facial validity of the waiver as applied to the facts in this case.

## Standard of Review

On review of a summary judgment, we recognize that the movant has the burden of showing that no genuine issue of material fact existed and that he was entitled to judgment as a matter of law. *American Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985). Where both parties move for summary judgment and one is granted and the other denied, we review the summary

judgment evidence presented by both sides and determine all questions presented and render a judgment as the trial court should have rendered. *Commissioners Court of Titus County v. Agan,* 940 S.W.2d 77, 80 (Tex.1997). Issues not expressly presented to the trial court by written motion or response will not be considered on appeal as grounds for reversal. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 674–75 (Tex.1979).

## Establishing Waiver

■ Waiver is an affirmative defense. Appellants must establish all the elements of waiver to be entitled to summary judgment. *See Bass & Co. v. Dalsan Properties–Abilene,* 885 S.W.2d 572, 577 (Tex. App.—Dallas 1994, no writ). Under Texas case law, waiver is the intentional relinquishment of a known right or the intentional conduct inconsistent with claiming that right. *Tenneco Inc. v. Enterprise Products Co.,* 925 S.W.2d 640, 643 (Tex. 1996); *University Nat. Bank v. MacFarland,* 635 S.W.2d 200, 202 (Tex.App.—San Antonio 1982, no writ). The elements of waiver include the following: (1) existing right, benefit, or advantage; (2) actual or constructive knowledge of its existence; (3) an actual intent to relinquish the right (which can be inferred from the conduct). *Id.* Ordinarily, the issue of waiver is a question of fact. *Tenneco Inc.,* 925 S.W.2d at 643. Where facts are clearly established and are undisputed, however, waiver becomes a question of law. *Id.*

## *Existing Right*

■ Sedona contends that the waiver clause utilized in the school district's bidding form does not apply to the present cause of action, because the alleged tort was committed after the waiver was signed. It is the appellant's assertion that under Texas case law, a party cannot waive a future intentional tort claim. Specifically, appellant contends that at the time it submitted its bid for consideration, it did not have an existing claim against

the school district, and could not have knowledge of a claim that did not exist. Appellees, on the other hand, argue that a waiver can be effective against an intentional tort claim that can arise in the future.

In support of its argument, appellant asserts that the waiver of an intentional tort claim offends public policy. In support of this assertion, appellant cites *Smith v. Golden Triangle Raceway,* 708 S.W.2d 574 (Tex.App.—Beaumont 1986, no writ). In *Golden Triangle,* the court adopted the rule espoused under the Restatement (Second) of Contracts § 195 (1979), which provides that a term which exempts a party from "tort liability for harm caused intentionally or recklessly is unenforceable on grounds of public policy." *Id.* at 576. Appellant would have this court be guided by *Golden Triangle.* Appellees, on the other hand, argue that Sedona did waive a presently existing right, the right to complain if it was not selected as the project contractor.

We find that a present right did exist when Sedona submitted its bid for consideration. We agree with the appellant that it did not know of the specific intentional tort claim it would be waiving once it had submitted its bid. However, absent evidence to the contrary, it did understand that it had the right to complain if it was not selected. When Sedona submitted its bid, it effectively waived that right. For this reason, we find that Sedona waived a presently existing right.

### Knowledge of Right's Existence

There is nothing in appellant's summary judgment evidence to indicate that it had actual knowledge of the right which was waived. Therefore, we look to the bidding forms and Sedona's conduct committed pursuant to those forms to establish constructive knowledge. The summary judgment evidence shows that the invitation to bid expressly stated the waiver provision. Sedona, by submitting a bid, would be waiving any claim arising out of the "administration, evaluation, or recommendation of any bid." In addition, the evidence shows the bid form expressly provided that its submission warranted that the bidder understood the terms of the bidding documents. We consider the submission of Sedona's bid as evidence that it maintained knowledge of the right to complain if it was not selected as the project contractor.

### Intent to Relinquish

The key element to waiver is intent. *Heinrich v. Wharton County Livestock, Inc.,* 557 S.W.2d 830, 834 (Tex.Civ. App.—Corpus Christi 1977, writ ref'd n.r.e.). In order to establish waiver, the act must be clear and decisive. *Id.* Sedona's bid form expressly provided for the waiver of any claims against NEISD, FPC and Powell. The submitted bid forms also provided that their submission indicated that bidders understood the terms of the bidding documents. Implicitly, by submitting the bid, Sedona acknowledged that it understood all terms within the bidding documents which included the waiver provision in the invitation to bid form. Simply, Sedona's conduct evidenced the intent to relinquish. We conclude this conduct constituted Sedona's actual intent to relinquish its right to complain, and assert any claims related to the bidding process against FPC and Powell.

### Consideration

Appellant further argues that a waiver, like any contract, must be supported by consideration. The Texas Supreme Court has held that consideration is not necessary to establish waiver, *U.S. Fidelity & Guaranty Co. v. Bimco Iron & Metal Corp.,* 464 S.W.2d 353, 358 (Tex. 1971), despite earlier case law to the contrary. *Roberts v. Griffith,* 207 S.W.2d 443, 446 (Tex.Civ.App.—Eastland 1948, writ ref'd n.r.e.); *see also Robinson v. Robinson,* 961 S.W.2d 292, 303 (Tex.App.—Houston [1st Dist.] 1997, no writ). We follow the Texas Supreme Court, which has

adopted the rule that consideration is not necessary to support waiver. Thus, the lack of consideration on the part of the NEISD, FPC and Powell did not affect the validity of the waiver. Accordingly, we do not hold that waiver, once established, was ineffective for lack of consideration.[1]

*Express Negligence Rule*

■ Assuming waiver is established, appellant also argues that the waiver was ineffective because the express negligence rule was not met. The express negligence rule provides that a party's intent to indemnify an indemnitee from the consequences of its own negligence must be specifically stated within the terms of the contract. *Ethyl Corp. v. Daniel Construction Co.*, 725 S.W.2d 705, 708 (Tex. 1987) (adopting express negligence rule); *Dresser Industries, Inc. v. Page*, 853 S.W.2d 505, 508-9 (Tex.1993) (applying express negligence rule to releases exculpating parties for negligence in advance). With respect to a negligence claim, a plaintiff must establish privity or a relationship between himself and the defendant. This is done by showing that the defendant owed a duty to the plaintiff and that the defendant violated that duty. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987). Application of the express negligence rule to the present case assumes that a duty was owed by FPC and Powell to Sedona.

■ We find this assumption is incorrect for two reasons. First, we do not find that FPC and Powell, as agents of the school district, owed a contractual duty to Sedona in the consideration of its bid. Under contract law, a contractor's bid merely constitutes an offer to contract. *See Urban Elec. Services, Inc. v. Brownwood Independent School Dist.*, 852 S.W.2d 676 (Tex.App.—Eastland 1993, no writ). Sedona's tender of a bid was an offer to contract, which FPC and Powell simply recommended to the NEISD not to accept. The school district's refusal is further reinforced by the statutory provision that the school district could reject any and all bids. TEX. LOC. GOV'T CODE. ANN. § 271.027(a) (Vernon 1988).

■ Second, we find that FPC and Powell, as the school district's agents, fulfilled any and all statutory duty owed to Sedona. Arguably, if any duty existed on behalf of FPC and Powell, we find that the duty was fulfilled based on the facts presented. Texas law provides that the NEISD did not have to give the contract to the lowest bidder so long as it informed Sedona of its decision, and provided a forum in which Sedona could argue its case. *See* TEX. LOC. GOV.CODE ANN. § 271.027(b) (Vernon 1998). The facts are undisputed that the NEISD permitted Sedona to argue and present its case before the school district board. Despite this, the board voted to give the contract to the second lowest bidder. Regardless of its decision, the NEISD, with FPC and Powell as its agents, complied with any and all statutory duty. We find nothing more was owed by the appellees. For these reasons, we do not find that the express negligence rule was invoked.

### Public Policy

We address appellant's first issue which questions whether public policy is offended by the waiver of an intentional tort. Under the limited circumstances in the present case, we do not believe public policy is offended. Appellant's oral argument before this court focused on the construction

---

1. Assuming consideration was necessary, we find that consideration was established. We agree with appellees that consideration was given when the NEISD accepted Sedona's bid for consideration and evaluation. *See e.g. Unocal Corp. v. Dickinson Resources, Inc.*, 889 S.W.2d 604, 608 (Tex.App.—Houston [14th Dist.] 1994, writ denied) (holding that consideration to support a waiver existed where a meeting, held to consider plaintiff's oil prospect information by defendant, was of "tangible value" to the plaintiff). The consideration and evaluation of Sedona's bid was of tangible value to Sedona.

of § 271.027 of the local government code.[2] In particular, appellant centered its argument on the statutory provision which mandates that a government entity select the "lowest responsible bidder." Tex. Loc. Gov't Code Ann. 271.027(b) (Vernon 1988). Through much of its argument, appellant centered on the term "responsible" and its meaning. The possible constructions of § 271.027 were not raised in the grounds for summary judgment by either party. Thus, in our opinion today, we do not pass on the definition of the term "responsible" or attempt to construe the provisions under § 271.027 as they are not issues brought before this court. See Tex.R.App. P. 33.1.; City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 674–75 (Tex. 1979).

However, we address the public policy concerns raised by both parties in their grounds for summary judgment and on appeal. We determine that our holding today does not offend public policy for two reasons. First, we recognize the limitations which other courts have placed on a rejected bidder's claim for damages. In Urban Elec. Services, Inc. v. Brownwood Independent School Dist., Urban sought damages for the school district's rejection of its bid. 852 S.W.2d 676 (Tex.App.—Eastland 1993, no writ). Based on a breach of contract claim, Urban argued that it was entitled to damages for not being selected by the school district because it was the lowest bidder. The court, on review, concluded that Urban did not have a cause of action based on a breach of contract claim because the school district's invitation to bid did not constitute an offer to contract. Id. at 678. The court held that Urban's only recourse was to seek an injunction, which it failed to do. Id. The court held that allowing a rejected bidder

to recover damages for lost profits would run contrary to public interest. Id. According to the court's reasoning, "taxpayers would be penalized twice: once for the overpayment to the company receiving the bid and once for Urban's lost profits." Id.

Urban is factually distinguishable from the present case where the rejected bidder has chosen to seek a claim against the architectural firm and not the school district. However, we conclude that public interest would also be adversely affected were we to hold FPC and Powell open to liability. If we were to open an architectural firm or engineering firm to liability for their recommendation, we would negate the process of finding a qualified contractor. We agree with the appellees that such a result would eviscerate the competitive bidding process, and relegate the process to a battle of numbers.

The competitive bidding process necessitates a process by which architect, engineers and other professionals be given the latitude to recommend or not recommend contractors. The responsibility of these professionals, retained for the purpose of undertaking a project on behalf of a school district, includes the assessment and evaluation of the qualifications and experiences of bidding contractors. This responsibility necessitates a process by which they can communicate their professional opinion openly and candidly.

Second, we conclude that Sedona's participation in the bidding process effectively served as consent, and opened the door to the possibility of an intentional tort. Where public policy is not negated, consent can constitute a defense against an intentional tort claim. See W. Page Keeton et al., Prosser & Keeton On Torts § 18 at 112 (5th ed.1984). Furthermore, with

---

2. Section 271.027 provides the following:
 (a) The governmental entity is entitled to reject any and all bids.
 (b) The contract must be awarded to the lowest bidder, but the contract may not be awarded to a bidder who is not the lowest bidder unless before the award each lower

bidder is given notice of the proposed award and is given an opportunity to appear before the governing body and present evidence concerning the bidder's responsibility.
Tex. Loc. Gov't Code Ann § 271.027 (Vernon 1988).

respect to defamation in particular, one can consent or invite defamatory words. *Id.* § 114 at 823; *See also* 2 F. JAMES HARPER & O. GRAY, THE LAW OF TORTS § 5.17 (1986). This court has previously found *Golden Triangle* to be too broad in its application of the Restatement (Second) of Torts. *See Smith v. Holley,* 827 S.W.2d 433, 438 (Tex.App.—San Antonio 1992, writ denied). In *Smith,* this court was faced with the issue of whether a prospective employee could release a previous employer from liability resulting from the communication of information regarding their work history. In its analysis, this court recognized the holding of *Golden Triangle,* but concluded that its application to intentional conduct was too broad. *Smith,* 827 S.W.2d at 437. This court stated, "that it is universally recognized that in the right circumstances one can consent to certain actions that otherwise would be intentional torts." *Id.* In *Smith,* we held Holley effectively consented to the possibility of defamation by signing a release form authorizing the release of work history and other information. *Id.* at 439. In the present case, Sedona's bid constituted consent to the possibility of defamation.[3]

We are further persuaded by other case law which has implicitly permitted the waiver of future intentional tort claims in other contexts. *See Unocal Corporation v. Dickinson Resources, Inc.,* 889 S.W.2d 604, 610 (Tex.App.—Houston [14th Dist.] 1994, writ denied) (holding a waiver, concerning oil and gas information, to be effective which permitted for the general waiver of future intentional tort claims and extinguished plaintiff's right to sue).

We agree with appellees that the submission of Sedona's bid constituted consent to the bidding process and the possibility of a negative assessment. Under the terms of the bidding form, the NEISD clearly indicated that this would be a competitive bidding process to search for the lowest responsible bidder. By submitting its bid form, Sedona acknowledged that it understood the bidding process and terms, and thereby consented to the process. There is nothing in the summary judgment evidence to indicate otherwise.

### Conclusion

We find appellant proved the elements of waiver as a matter law. Thus, we overrule appellant's issues and affirm the judgment of the trial court.

---

**3.** We should note that the only evidence in the record supporting a claim of defamation is the affidavit of Boone Powell in which he states that FPC did not recommend Sedona based on its professional opinion that it was not qualified to undertake the project. Its opinion was communicated solely to the NEISD.